■ STS PARTNERS FUND, LP, et al., Appellants-Respondents, v DEUTSCHE BANK SECURITIES, INC., et al., Respondents, and WELLS FARGO BANK, N.A., Respondent-Appellant. [53 NYS3d 632]—

Order, Supreme Court, New York County (Eileen Bransten, J.), entered June 24, 2016, which, to the extent appealed from, granted the motion of defendants Deutsche Bank Securities, Inc. (DB Securities) and Deutsche Mortgage Securities, Inc. (DB Mortgage; together with DB Securities, the DB defendants) to dismiss the supplemental complaint as against them, and granted defendant Wells Fargo Bank, N.A.'s motion to dismiss all claims except the third cause of action as against it, unanimously modified, on the law, to grant Wells Fargo's motion to dismiss the third cause of action to the extent it is not based on the IRR Threshold, and otherwise affirmed, without costs.

All claims against the DB defendants were correctly dismissed based on the no-action clause in the trust agreements. *Quadrant Structured Prods. Co., Ltd. v Vertin* (23 NY3d 549 [2014]), which plaintiffs cite, did not involve the termination of a trust. Read in context, the sentence on which plaintiffs rely ("[T]he no-action clause applies when the Trustee is authorized to decide whether to act; it cannot serve as an outright prohibition on a suit filed by a securityholder in the case where the Trustee is without authorization to act" [*id.* at 567]) means that a no-action clause does not bar claims—such as breach of fiduciary duty against a corporation's board of directors—that an indenture trustee cannot bring. Notably, the Court of Appeals ruled that "those claims sounding in breach of contract and arising from the indenture are barred—requiring the majority securityholders to bring those actions through the Trustee" (*id.* at 569). The claims that were dismissed included breach of the implied covenant of good faith and fair dealing and tortious interference with that covenant (*id.* at 558 n 10). Unlike the claims in *Quadrant* that were not dismissed, plaintiffs' claims all arise out of the trust agreements and the amendments thereto.

Even if, arguendo, plaintiffs were third-party beneficiaries of the trust agreements (*see Walnut Place LLC v Countrywide Home Loans, Inc.*, 35 Misc 3d 1207[A], 2012 NY Slip Op 50601[U], *1 n 2 [Sup Ct, NY County 2012], *affd* 96 AD3d 684 [1st Dept 2012]), the no-action clause would still apply (*see* 96 AD3d at 684).

So much of the third cause of action as alleged that Wells Fargo breached the trust agreements by executing the amendments made by it and DB Mortgage was correctly dismissed, because the plain language of section 9.01 (a) (v) of the trust agreements permitted those amendments (*see generally Quadrant*, 23 NY3d at 559-560).

So much of the third cause of action as alleges that certificateholder consent was required to terminate the RS6 trust should also be dismissed, because, as sections 7.01 and 7.03 show, certificateholder consent was not the only way in which the trust could terminate.

The third cause of action should also be dismissed as against Wells Fargo based on anything other than the IRR Threshold. Both the original and amended trust agreements provide that an auction of the underlying certificates must yield at least the Minimum Auction Call Amount. Of the five components of "Minimum Auction Call Amount," only one—the IRR Threshold—relates to the certificates held by plaintiffs (the Class A-X Certificates).

Plaintiffs contend that, in addition to the IRR Threshold, they had the right to receive a Principal Distribution Amount, a payment under the Cap Agreements, and the Class A-X Distribution Amount for the final month of the RS6 trust's existence. However, the documentary evidence submitted by defendants shows that, as early as December 31, 2007, the Class A-X Certificateholders had received their principal back. The supplemental complaint does not allege that plaintiffs were entitled to any amounts under the Cap Agreements, and plaintiffs may not raise this issue for the first time on appeal, because the "issue might have been obviated by the submission of documentary evidence" (*Ta-Chotani v Doubleclick, Inc.*, 276 AD2d 313, 313 [1st Dept 2000]).

With respect to the Class A-X Distribution Amount, plaintiffs admit that they received distributions from the RS6 trust through August 2014. The trust was terminated on or about September 12, 2014. Hence, there was no Distribution Date on September 28, 2014; by definition, a Class A-X Distribution Amount depends on a Distribution Date. The Final Distribution Date depends on a notice pursuant to section 7.01, which was never delivered.

With respect to the IRR Threshold, Wells Fargo submitted documentary evidence that, as of August 15, 2013, the internal rate of return (IRR) for the RS6 Class A-X Certificates was more than 128% and the IRR for the RS5 Class A-X Certificates was more than 137%. However, the underlying certificates for the RS6 trust were auctioned on September 12, 2014, and the underlying certificates for the RS5 trust were auctioned on October 9, 2015. Since the trust agreements define IRR as an *annual* rate, the 2013 reports from PricewaterhouseCoopers do not utterly refute plaintiffs' factual allegations or conclusively establish a defense as a matter of law (*see e.g. Goshen v Mutual Life Ins. Co. of N.Y.*, 98 NY2d 314, 326 [2002]).

The claim for breach of the implied covenant of good faith and fair dealing was correctly dismissed as against Wells Fargo, because section 6.01 (e) (i) of the trust agreements states, "[N]o implied covenants or obligations shall be read into this Agreement against the Trustee" (*see Hotel 71 Mezz Lender LLC v Mitchell*, 63 AD3d 447, 448 [1st Dept 2009]).

Wells Fargo's failure to exercise due care in performing ministerial tasks does not constitute a breach of fiduciary duty (*see AG Capital Funding Partners, L.P. v State St. Bank & Trust Co.*, 11 NY3d 146, 157-158 [2008]). Nor does the supplemental complaint state a cause of action for fiduciary duty based on conflict of interest. While an indenture trustee's "pre-default

duty to avoid conflicts of interest . . . is a fiduciary duty" (*Commerce Bank v Bank of N.Y. Mellon*, 141 AD3d 413, 416 [1st Dept 2016]), plaintiffs made only conclusory allegations that Wells Fargo received more under the RS6 amendment than it would have received under the original trust agreement (*see id.*). With respect to RS5, defendants explained the amendment's 30 basis points in their opening letter brief, and, as the court noted, plaintiffs failed to respond to this in their opposition letter brief. In any event, the fiduciary duty claim is duplicative of the contract claim (*see AG Capital Funding Partners, L.P. v State St. Bank & Trust Co.*, 40 AD3d 392, 394 [1st Dept 2007], *mod on other grounds* 11 NY3d 146 [2008]).

We have considered plaintiffs' and Wells Fargo's remaining arguments and find that they do not warrant relief beyond the extent indicated. Concur—Sweeny, J.P., Acosta, Renwick, Moskowitz and Kahn, JJ.